Slip Op. 20-137

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S., <br><br> Plaintiff, <br><br> HABAS SINAI VE TIBBI GAZLAR ISTIHSAL ENDUSTRISI A.S., <br><br> Consolidated Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> NUCOR CORPORATION, CHARTER STEEL and KEYSTONE CONSOLIDATED INDUSTRIES, INC., <br><br> Defendant-Intervenors. | Before: Gary S. Katzmann, Judge <br> Consol. Court No. 18-00143 |

## OPINION

[Commerce's Remand Results are remanded consistent with this opinion.]

Dated: September 23, 2020

Matthew M. Nolan and Leah N. Scarpelli, Arent Fox LLP, of Washington, DC, for plaintiff.

David L. Simon, Law Office of David L. Simon, of Washington, DC, for consolidated plaintiff.

Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant *United States*. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, L. Misha Preheim, Assistant Director. Of counsel on the brief was Nikki Kalbing, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Maureen E. Thorson, Derick G. Holt, and Jeffrey O. Frank, Wiley Rein LLP, of Washington, DC, for defendant-intervenor *Nucor Corporation*.

R. Alan Luberda, Kelley Drye & Warren, LLP, of Washington, DC, for defendant-intervenors *Charter Steel and Keystone Consolidated Industries, Inc*.

  Katzmann, Judge:  The court returns to an antidumping ("AD") investigation by the United States Department of Commerce ("Commerce") on imports of carbon and alloy steel wire rod ("wire rod") imported into the United States from Turkey.  Before the court is Commerce's Final Results of Redetermination Pursuant to Court Remand (Apr. 27, 2020), ECF No. 55 ("Remand Results"), which the court ordered in Icdas Celik Enerji Tersane Ve Ulasim Sanayi, A.S., v. United States, 44 CIT __, 429 F. Supp. 3d 1353 (2020) ("Icdas I"), so that Commerce could recalculate its duty drawback adjustment in accordance with the court's instructions.  Plaintiff Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S. ("Icdas") and consolidated-plaintiff Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş. ("Habaş") (collectively, "Plaintiffs") again challenge Commerce's methodology for calculating their respective AD margins.  Pl. Icdas's Comments on Final Results of Redetermination, May 27, 2020, ECF No. 58 ("Pl.'s Br."); Comments of Consol. Pl. Habaş in Opp'n to Redetermination on Remand, May 27, 2020, ECF No. 57 ("Consol. Pl.'s Br.").  Defendant the United States ("the Government") and Defendant-Intervenor Nucor Corporation ("Nucor") request that the court affirm Commerce's Remand Results.  Def.'s Resp. to Comments on Remand Redetermination, June 23, 2020, ECF No. 59 ("Def.'s Br."); Nucor Corp.'s Resp. to Comments on Final Results of Redetermination, June 26, 2020, ECF No. 60 ("Def.-Inter.'s Br.").  The court agrees with Plaintiffs that Commerce's remand methodology is not in accordance with law and thus again remands the duty drawback methodology to Commerce.

## PROCEDURAL BACKGROUND

The court set out the relevant legal and factual background of the proceedings in further detail in its previous opinion, Icdas I, 429 F. Supp. 3d at 1357–60.  Information relevant to the instant opinion is set forth below.

On March 28, 2017, Commerce initiated an AD investigation into wire rod from Turkey based on petitions from domestic producers alleging that imports of wire rod were being imported into the United States to the detriment of the domestic industry.  See Carbon and Alloy Steel Wire Rod From Belarus, Italy, the Republic of Korea, the Russian Federation, South Africa, Spain, the Republic of Turkey, Ukraine, United Arab Emirates, and United Kingdom: Initiation of Less-Than-Fair-Value Investigations, 82 Fed. Reg. 19,207, 19,207 (Dep't Commerce Apr. 26, 2017), P.R. 8.  After the requisite investigation, Commerce agreed with petitioners and calculated AD margins for Icdas and Habaş of 7.94 percent and 4.93 percent, respectively, and an "All Others" rate of 6.34 percent.  See Carbon and Alloy Steel Wire Rod from Italy, the Republic of Korea, Spain, the Republic of Turkey, and the United Kingdom, 83 Fed. Reg. 23,417 (Dep't Commerce May 21, 2018), P.R. 1289; Carbon and Alloy Steel Wire Rod from Turkey: Final Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances, 83 Fed. Reg. 13,249, 13,250 (Dep't Commerce Mar. 28, 2018), P.R. 1285.  In its investigation, Commerce determined that Icdas and Habaş satisfied the criteria of 19 U.S.C. § 1677a(c)(1)(B) (2012)[1] and qualified for a duty drawback adjustment on rebates of duties paid on goods that were subsequently exported, pursuant to Turkey's Inward Processing Regime.  See Mem. from J. Maeder to G. Taverman, re: Decision Mem. for the Prelim. Determination and Negative

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provision of Title 19 of the U.S. Code, 2012 edition.

Determination of Critical Circumstances at 10 (Dep't Commerce Oct. 24, 2017), P.R. 951. In calculating the duty drawback adjustment, Commerce employed a "duty neutral" methodology, which allocated duty drawback over "all production for the relevant period . . . ." Id. at 11; Mem. from J. Maeder to G. Taverman, re: Issues and Decision Mem. for the Final Affirmative Determination and Negative Determination of Critical Circumstances at 9 (Dep't Commerce Mar. 19, 2018), P.R. 1273 ("IDM"). As Commerce explained in the IDM, to fairly compare "[export price] with [normal value], . . . Commerce will make the duty drawback adjustment to [export price] in a manner that will render this comparison duty neutral." Id. at 9. Thus, Commerce "made an upward adjustment to [export price] based on the amount of the duty imposed on the input and rebated or not collected on the export of the subject merchandise by allocating the amount rebated or not collected to all production for the relevant period based on the cost of inputs during the POI." Id. at 9.

Plaintiffs challenged the Amended Final Determination before the court. Icdas's Summons, June 19, 2018, ECF No. 1; Icdas's Compl., July 19, 2018, ECF No. 8; Habaş's Summons, Habaş v. United States, No. 18-145 (CIT filed June 19, 2018), ECF No. 1; Habaş's Compl., Habaş, No. 18-145, ECF No. 6 (CIT filed July 12, 2018); Joint Mot. to Consol. Cases, Sept. 20, 2018, ECF No. 23; Ct. Order Granting Mot., Sept. 26, 2018, ECF No. 26. Plaintiffs claimed, in relevant part, that the duty neutral methodology employed by Commerce to calculate the duty drawback adjustment contradicts the plain language of 19 U.S.C. § 1677a(c), resulting in higher AD duties on their exports of wire rod from Turkey by not affording Plaintiffs their full duty drawback adjustment. Icdas I, 429 F. Supp. 3d at 1360. The court agreed, holding that the duty neutral methodology was contrary to law. Id. at 1360–65. The court remanded the duty

drawback methodology "with instructions to recalculate the duty drawback adjustment." Id. at 1365.

On remand, Commerce added the full amount of exempted duties to export price as directed by the court. Remand Results at 12. Further, Commerce made two circumstances of sale adjustments ("COS adjustments") to normal value to increase it by the same amount as the duty drawback adjustment. Id. at 15–16. Commerce calculated new dumping margins of 8.72 percent and 3.22 percent for Icdas and Habaş, respectively, and an All Other rate of 4.78 percent. Id. at 44. The Government filed the final Remand Results with the court on April 27, 2020. See id. Plaintiffs filed their comments on the Remand Results on May 27, 2020. Pl.'s Br.; Consol. Pl.'s Br. The Government and Nucor filed replies to these comments on June 26, 2020. Def.'s Br.; Def.-Inter.'s Br.

**JURISDICTION, STANDARD OF REVIEW, AND INTERPRETIVE FRAMEWORK**

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(i). The standard of review in this action is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i): "[t]he court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." The court also reviews the Remand Results "for compliance with the court's remand order." See Beijing Tianhi Indus. Co. v. United States, 39 CIT __, __, 106 F. Supp. 3d 1342, 1346 (2015) (citations omitted).

The two-part framework established in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), guides the court's review of Commerce's statutory interpretation. See also Apex Frozen Foods Private Ltd. v. United States, 862 F.3d 1322, 1329 (Fed. Cir. 2017). Under Chevron's first prong, the court asks "whether Congress has directly

spoken to the precise question at issue." 467 U.S. at 842. See also Apex Frozen Foods, 862 F.3d at 1329. "If yes, 'that is the end of the matter,' and we 'must give effect to the unambiguously expressed intent of Congress.'" Apex Frozen Foods, 862 F.3d at 1329 (quoting Chevron, 467 U.S. at 842–43). If, however, "the statute is silent or ambiguous with respect to the specific issue," the court proceeds to the second prong of the Chevron analysis. Id. (quoting Chevron, 467 U.S. at 843). "[T]he question for the court" then becomes "whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843.

## DISCUSSION

Plaintiffs challenge Commerce's Remand Results, claiming that the COS adjustment to normal value did not comply with court's remand order and was not in accordance with law -- specifically the statute, Commerce's regulations, and recent persuasive caselaw. See Pl.'s Br. at 4–14; Consol. Pl.'s Br. at 1–11. Because Commerce's remand methodology contravenes the plain language of the statute and did not comply with the court's previous opinion, the court remands to Commerce for a second time.

### I. *Legal Framework*

As discussed in detail Icdas I, 429 F. Supp. 3d at 1361–62, pursuant to statute, "if a foreign country would normally impose an import duty on an input used to manufacture the subject merchandise, but offers a rebate or exemption from the duty if the input is exported to the United States, then Commerce will increase [export price] to account for the rebated or unpaid import duty (or, the 'duty drawback')." Saha Thai Steel Pipe (Public) Co. v. United States, 635 F.3d 1335, 1338 (2011); 19 U.S.C. § 1677a(c). The duty drawback adjustment is intended "to account for the fact that the producers remain subject to the import duty when they sell the subject merchandise domestically, which increases home market sales prices and thereby increases [normal value]." Saha Thai, 635 F.3d at 1338. By adjusting export price to reflect duty drawback,

the adjustment ensures "a fair comparison between normal value and export price." Tosçelik Profil ve Sac Endüstrisi A.S. v. United States, 42 CIT __, __, 321 F. Supp. 3d 1270, 1275 (2018); id., 43 CIT __, 375 F. Supp. 3d 1312 (2019); id., 43 CIT __, 415 F. Supp. 3d 1395 (2019) ("Tosçelik III"), id., 44 CIT __, Slip Op. 20-105 (July 28, 2020) (citing Saha Thai, 635 F.3d at 1338 (other citations omitted)).

In its previous opinion, the court ordered Commerce "to recalculate the duty drawback adjustment in accordance with" its opinion. Icdas I, 429 F. Supp. 3d at 1365. There, the court concluded that the statute is not silent on duty drawback methodology, but that it "explicitly states that the export price should be increased by the amount of import duties rebated or not collected because of exportation of the merchandise. The plain language, moreover, provides no indication that the duty drawback should instead be tied to overall production." Id. at 1364 (citing 19 U.S.C. § 1677a(c)(1)(B) (stating that export price shall be increased by "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States") (emphasis added)). The court also highlighted the legislative history of the statute and five instances in which the court rejected the duty neutral methodology. Id. at 1364–65 (citations omitted). Thus, the court concluded that "[t]he plain language of the statute, persuasive case law from this court, and the legislative history all support the proposition that the duty drawback must be tied to exported merchandise, not overall domestic production." Id. at 1365. Based on this conclusion, the court remanded the duty drawback methodology to Commerce "in accordance with [that] opinion." Id. at 1365, 1372.

Of further relevance to Commerce's Remand Results, Congress authorized Commerce to adjust normal value for differences between home market price and U.S. price that are not

otherwise provided for in the statute and are due to "other differences in the circumstances of sale," i.e. COS adjustments. 19 U.S.C. §1677b(a)(6)(C)(iii). Commerce's regulations interpreting this provision limit COS adjustments to "direct selling expenses and assumed expenses." 19 C.F.R. § 351.410(b). Commerce defines direct selling expenses as "expenses, such as commissions, credit expenses, guarantees, and warranties, that result from, and bear a direct relationship to, the particular sale in question." Id. § 351.401(c). By contrast, Commerce defines assumed expenses as "selling expenses that are assumed by the seller on behalf of the buyer, such as advertising expenses." Id. § 351.410(d).

## II.     *Commerce's Remand Methodology*

On remand, Commerce added the full amount of duty drawback to the United States export price in its AD duty calculation as directed by the court. Remand Results at 12. Further, Commerce made additional COS adjustments to normal value of wire rod in Turkey because of its continued insistence on accounting for Turkey's drawback scheme on both sides of the home market to U.S. price comparison. See id. at 14. Commerce's remand methodology provides for two COS adjustments, one to remove all duties from normal value and a second to add the per-unit amount of duty as the export price to normal value. Id. at 15–16. Finding that "neither Habaş nor Icdas recorded import duties associated with imported raw materials in its costs," Commerce concluded that no COS adjustment requirement was required to "remove all booked duties eligible for rebate from the [constructed value] and home market price[]." Id. at 15. Second, Commerce made a COS adjustment to account for the fact that Turkey's duty drawback scheme "allocated [the price of inputs] across overall production, rather than market-specific production," a difference from standard costs accounting. Id. at 16. Thus, Commerce "add[ed] to the [normal value] the same per-unit amount of rebated or forgiven duty added to U.S. price." Id. at 17.

Commerce explained that in accordance with the purpose of the drawback duty statute and the Federal Circuit's opinion in Saha Thai, it made these adjustments to account for Congress's assumption in implementing the statute that home market price reflects import duties. Id. at 7–8. Thus, the difference in circumstance was the assignment of duty costs to products "based on where they were sold." Id. at 14. In sum, Commerce made a different adjustment to its duty calculation on remand to achieve the same results as its original duty neutral methodology.

The Government and Nucor explain these results as consistent with the court's remand order, in accordance with "applicable statutory and regulatory provisions," and not precluded by other decisions of this court. Def.'s Br. at 3, 6–21; Def.-Inter.'s Br. at 4, 14. The Government states that, because Commerce "assumes that imported inputs were consumed in the exported finished goods," "that a [COS] adjustment was required to make a fair comparison between normal value and export prices." Def.'s Br. at 3 (citations omitted). The Government concludes that Commerce's remand methodology comports with the purpose of the duty drawback statute, which it describes as "to prevent artificially overstating the [AD] margin," and the underlying assumption of the statute "that the adjustment to United States price is necessary because the same amount of duties are included in the normal value." Def.'s Br. at 10. Similarly, Nucor claims that Commerce's Remand Results are supported by the same justifications for the duty neutral methodology rejected by the court's previous opinion. See Def.-Inter.'s Br. at 4–9. The Government also concludes that the Remand Results are consistent with the court's instructions that did not bar "a [COS] adjustment to normal value to account for direct selling expenses." Def.'s Br. at 12. See also Def.-Inter.'s Br. at 1.

Plaintiffs maintain that the Remand Results do not comply with the court's remand instructions, the statute, Commerce's regulations, or caselaw. Pl.'s Br. at 4–14; Consol. Pl.'s Br.

at 1–11. First, Plaintiffs argue that Commerce's COS adjustment negates the duty drawback adjustment ordered by the court and rests on flawed assumptions about the effect of Turkey's duty drawback scheme and the purpose of the duty drawback adjustment. See Pl.'s Br. at 4–5. See also Pl.'s Br. at 12 ("[A]s [Commerce] has itself concluded, '[t]o make an adjustment to [normal value] for duty drawback where there is no evidence of such drawback on home market sales would nullify the adjustment to U.S. price.'" (quoting Welded Carbon Steel Standard Pipe and Tube Products from Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2013–2014, 80 Fed. Reg. 76,674 (Dep't Commerce Dec. 10, 2015), and accompanying Issues and Decision Mem. at 14, cmt. 4)); Consol. Pl.'s Br. at 5–6. Plaintiffs also argue that Commerce's remand methodology is inconsistent with the duty drawback statute, COP adjustment statute, and Commerce's regulations implementing these statutes. Pl.'s Br. at 6–12; Consol. Pl.'s Br. at 8–9, 11–12. Finally, Plaintiffs note that Commerce's remand methodology has also been rejected by the court in several recent decisions and is unsupported by the Federal Circuit's caselaw. Pl.'s Br. at 13–15 (citations omitted); Consol. Pl.'s Br. at 1–5 (citations omitted). See also Consol. Pl.'s Br. at 7 ("Commerce conflates the cost adjustment permitted in Saha Thai with a more general adjustment to normal value, which was never addressed in Saha Thai.").

### III. Analysis

The court concludes that Commerce's remand methodology does not comport with the plain language of the statute.[2]

On remand, Commerce classified the operation of Turkey's duty drawback scheme as a direct selling expense and thus made a COS adjustment to normal value to account for this expense.

---

[2] Because the court remands Commerce's Remand Results on this basis, it need not address the remainder of Plaintiffs' challenges to Commerce's remand methodology.

Remand Results at 13–14.  Commerce explained that the statute allows for an adjustment to normal value where a duty drawback scheme, such as the one at issue here, "treat[s] the import duty liability different from standard cost accounting by permitting the assignment of imported inputs and the associated imports duties to export sales, while attributing the domestic purchases exclusive of duty to domestic sales."  Remand Results at 13 (citing 19 U.S.C. § 1677b(a)(6)(C)(iii); Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, Vol. 1, 820 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4163).

However, Commerce's methodology and explanation for its COS adjustment does not comport with the statute or its own interpretation that statute.[3]  The statute allows for adjustments to normal value for differences between normal value and U.S. price, "other than a difference for which allowance is otherwise provided under this section" and are due to "other differences in the circumstances of sale."  19 U.S.C. § 1677b(a)(6)(C).  This language explicitly ties adjustments to normal value to differences in sales, excluding all other adjustments directed by statute.  Here, Commerce made an adjustment to normal value in order to address what it views as a distortion

---

[3] Plaintiffs also challenge the Remand Results as inconsistent with Commerce's regulations, Pl.'s Br. at 6–11; Consol. Pl.'s Br. at 8–9.  Two other opinions of the court conclude that the same methodology applied on remand here also contravenes Commerce's own regulation.  Habaş Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States, 43 CIT __, 361 F. Supp. 3d 1314 (2019); id., 43 CIT __, __, 415 F. Supp. 3d 1195, 1210–12 (2019) ("Habaş II"), id., 44 CIT __, 439 F. Supp. 3d 1342 (2020), id., 44 CIT __, Slip Op. 20-131 (Sept. 4, 2020); Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States, 42 CIT __, 308 F. Supp. 3d 1297 (2018); id., 42 CIT __, 357 F. Supp. 3d 1325 (2018), id., 43 CIT __, 415 F. Supp. 3d 1216, 1230–32 (2019); id., 44 CIT __, 435 F. Supp. 3d 1378 (Apr. 13, 2020), appeals docketed, Nos. 2020-1999; 2020-2003 (Fed. Cir. June 10, 2020); Uttam Galva Steels Ltd. v. United States, 42 CIT __, 311 F. Supp. 3d 1345 (2018); id., 43 CIT __, 374 F. Supp. 3d 1360 (2019) ("Uttam Galva II"); id., 43 CIT __, __, 416 F. Supp. 3d 1402, 1407 (2019) ("Uttam Galva III"), appeal docketed No. 2020-1461 (Fed. Cir. Feb. 12, 2020).  The court need not reach that issue because of its conclusion that Commerce's methodology did not comport with the statute.  The court refers to the regulation only to the extent that Commerce's own interpretation of the statute illustrates that its remand methodology violates the statutory language.

created by the duty drawback provision and Turkey's duty drawback scheme as it impacts overall production costs. Remand Results at 12–14. Thus, Commerce did not address a cost incurred because of the circumstance of a particular sale, but instead the impact on overall costs by operation of law. See also Pl.'s Br. at 5 ("[Commerce] again improperly compares U.S. price to [cost of production] to register an imbalance, despite the fact that there is only one [cost of production] in a dumping calculation and no distortion from a [normal value]-export [cost of production] differential").

COS adjustments are made to compare prices "at a similar point in the chain of commerce." Maverick Tube Corp. v. Tosçelik Profil ve Sac Endustrisi A.S., 861 F.3d 1269, 1274 (Fed. Cir. 2017) (citation omitted). This does not include varying duty costs resulting from different sources of inputs and a corresponding statutory duty drawback adjustment. Cf. Habaş Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States, 43 CIT __, 361 F. Supp. 3d 1314 (2019); id., 43 CIT __, __, 415 F. Supp. 3d 1195, 1212 (2019) ("Habaş II"); id., 44 CIT __, 439 F. Supp. 3d 1342 (2020); id., 44 CIT __, Slip Op. 20-131 (Sept. 4, 2020) (citing Antidumping Duties; Countervailing Duties, 61 Fed Reg. 7,308, 7,346 (Dep't Commerce Feb. 27, 1996)); Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States, 42 CIT __, 308 F. Supp. 3d 1297 (2018); id., 42 CIT __, 357 F. Supp. 3d 1325 (2018) ("Ereğli II"); id., 43 CIT __, 415 F. Supp. 3d 1216, 1231 (2019) ("Ereğli III"); id., 44 CIT __, 435 F. Supp. 3d 1378 (Apr. 13, 2020), appeals docketed, Nos. 2020–1999; 2020–2003 (Fed. Cir. June 10, 2020) (same). See also Consol. Pl.'s Br. at 8–9 ("As the cost-side adjustment approved in Saha Thai makes clear, the imputation of a duty cost affects the cost of production; it does not relate to sales transactions."). If COS adjustments were interpreted as broadly as Commerce suggests in its Remand Results, then it may also follow that Commerce could use COS adjustments to nullify any adjustment to export price statutorily provided for in the

interest of a "fair comparison."[4] The court, instead, reads the COS provision to effectuate the meaning of the Trade Act as a whole. Commerce's remand methodology using a COS adjustment contravenes the statute.[5] See Chevron, 467 U.S. at 842–43 (holding, where "Congress has directly spoken to the precise question at issue," "that is the end of the matter" because the court "must give effect to the unambiguously expressed intent of Congress").

Commerce improperly treats the COS provision as a catch-all adjustment for normal value calculation. Commerce contends that the COS "provision is the only means to ensure a fair comparison" with a duty exemption program like the one at issue here. Remand Results at 36. See also Remand Results at 38 ("Such an expense is exactly what the COS adjustment is created for when no other statutory provision applies."). However, Commerce may not use the COS provision as a catch-all provision but must make COS adjustments in line with the text and purpose of the statute. See Zenith Elecs. Corp. v. United States, 14 CIT 831, 837, 755 F. Supp. 397, 406 (1990) ("Zenith I"), aff'd, 988 F.3d 1573 (Fed Cir. 1993) ("Zenith II") (stating that the COS provision "is not an omnibus provision to be used . . . for whatever adjustment [Commerce] seek[s]

---

[4] As the court noted in Habaş II, the statute as explained by the Federal Circuit expressly states how to make a fair comparison between normal value and U.S. price. 415 F. Supp. 3d at 1210 (citing Timken Co. v. United States, 354 F.3d 1334, 1344 (Fed. Cir. 2004)). Thus, the court in Habaş II concluded that "the 'fair comparison' requirement is met when normal value is calculated in accordance with the statute and does not provide Commerce with additional authority to make adjustments 'beyond those explicitly established in the statute.'" Id.

[5] While the Government claims that Commerce's remand methodology is "not an adjustment to the costs of production in the home market," but rather an adjustment to normal value, Def.'s Br. at 8, its own explanation of the COS adjustment explains that it is tied to Commerce's calculation of "cost based on the annual average cost of input, which includes both input prices with duties and domestically-sourced inputs without duties." Def.'s Br. at 14. Thus, its claim that the purpose of duty drawback scheme being to promote export sales and "incentivize[s] parties to produce merchandise from an imported input and export the merchandise" in order to justify the COS adjustment is unavailing. See Def.'s Br. at 19. See also Def.-Inter.'s Br. at 12 ("[W]here there is a duty drawback system in place, duty costs are an expense related to a respondents' [sic] decision to sell goods to a particular market.").

Consol. Court No. 18-00143                                                                                           Page 14

to effect"). The Zenith cases are instructive on this point. In Zenith I, this court rejected Commerce's use of a COS adjustment to make an adjustment to normal value to nullify a statutory adjustment for taxes tied to exportation in order to achieve a tax neutral dumping margin to avoid what Commerce considered a distortion in the dumping margin. 755 F. Supp. at 405–07. The court held that COS adjustments "provide a means for addressing those items not otherwise included in the statute," and that, because the tax adjustment was statutorily provided for, Commerce could not use the COS provision to further adjust the normal value to account for these taxes. Id. at 406. The Federal Circuit agreed with this holding on appeal and stated that the court "properly interpreted the general circumstances-of-sale language to prevent [Commerce] from effectively writing the specific tax adjustment section out of the statute." Zenith II, 988 F.3d at 1581. Further, the Federal Circuit stated, "Commerce did not employ [the COS adjustment provision] to remedy a dumping margin variance caused by a circumstance of sale, but a variance caused by operation of the [statute]." Id. ("[N]othing in the enactment history of the circumstances-of-sale provision permits [Commerce] to trump the express and specific statutory language."). Commerce's COS adjustment here is remarkably analogous.[6] Thus, the court concludes that Commerce may not use a COS adjustment to nullify the duty drawback adjustment provided for by statute.

Furthermore, Commerce's reliance on Saha Thai is strained. Commerce states that "the Federal Circuit has held, in Saha Thai, that it is appropriate for Commerce to add the duty to

---

[6] Nucor argues that this case is more analogous to a case that followed the Zenith cases, Federal-Mogul Corporation v. United States, in which the Federal Circuit upheld Commerce's tax neutral methodology. Def.-Inter.'s Br. at 14–15. The court does not find this argument persuasive because Federal-Mogul did not overturn the Zenith cases but instead approved of a tax neutral methodology that did not include a COS adjustment. See 63 F.3d 1572, 1577–82 (1995). Thus, the Zenith cases are more analogous to Commerce's methodology using a COS adjustment here.

[normal value], because otherwise the dumping calculation would not be duty-drawback neutral." Remand Results at 33 (citing 635 F.3d at 1343). The Federal Circuit in Saha Thai affirmed adjustments to cost of production and constructed value that were included in the normal value calculation, not a direct adjustment to normal value through a COS adjustment. 635 F.3d at 1341–43. See also Uttam Galva Steels Ltd. v. United States, 42 CIT __, 311 F. Supp. 3d 1345 (2018); id., 43 CIT __, __, 374 F. Supp. 3d 1360, 1363 (2019) ("Uttam Galva II"); id., 43 CIT __, 416 F. Supp. 3d 1402 (2019) ("Uttam Galva III"), appeal docketed, No. 2020-1461 (Fed. Cir. Feb. 12, 2020) ("Saha Thai . . . should not be expanded to encompass all duty drawback adjustment calculations made by Commerce") (citation omitted); Ereğli II, 357 F. Supp. 3d at 1334 ("Commerce's interpretation of the Federal Circuit's discussion of duty inclusivity[, in Saha Thai] . . . , which would neutralize the duty drawback adjustment, goes further than the opinion supports and is inconsistent with the purpose of the statute."). There, the Federal Circuit observed that "[a]n import duty exemption granted only for exported merchandise has no effect on home market sales prices" and thus, "the duty exemption should have no effect on [normal value]." Saha Thai, 635 F.3d at 1342. Commerce's reliance on Saha Thai for an overall adjustment to normal value stretches Saha Thai's holding on cost calculations beyond its meaning. More importantly, the Saha Thai holding did not speak directly to COS adjustments to normal value, the defect that the court identifies in Commerce's remand methodology here.

Notably, this court rejected Commerce's remand methodology in four other opinions after being instructed to recalculate duty drawback adjustments on remand. See generally Habaş II;

Ereğli III; Uttam Galva III; Tosçelik III.[7]  Commerce's methodology in this case is no different, as Commerce and the Government acknowledge.  Remand Results at 38; Def.'s Br. at 16.[8]

Finally, Commerce's remand methodology does not comport with the court's previous opinion.  As Commerce explains in the Remand Results, "Commerce . . . applied its revised methodology to account for duty drawback on the [normal value] side of the equation."  Remand Results at 12.  Thus, Commerce's remand methodology, like the duty neutral drawback methodology the court held to be unlawful in Icdas I, also has the effect of adjusting normal value so that the duty drawback is not strictly tied to exported merchandise as required by statute.  See Icdas I, 429 F. Supp. 3d at 1365 (holding that Commerce may not divide "the duty drawback over domestic sales, to which the drawback is unrelated").  That Commerce repackaged this adjustment as a COS adjustment does not alter the court's previous conclusion.  Cf. Zenith III, 988 F.2d at 1581 (holding that Commerce may not use the COS provision to "effectively writ[e] [a separate adjustment] section out of the statute.").  See also Habaş II, 415 F. Supp. 3d at 1209; Ereğli III, 415 F. Supp. 3d at 1228–29; Tosçelik III, 415 F. Supp. 3d at 1400 ("[T]he circumstance of sale adjustment does not remedy an imbalance; it negates the duty drawback adjustment.").  In response to Plaintiffs' arguments on the draft remand results, Commerce stated that its remand methodology

---

[7] Various appeals from these decisions are pending at the Federal Circuit.  See Ereğli, appeals docketed, Nos. 2020-1999; 2020-2003 (Fed. Cir. June 10, 2020); Uttam Galva, appeal docketed, No. 2020-1461 (Fed. Cir. Feb 12, 2020).  However, as of the date of this opinion, the Federal Circuit has not yet heard argument or decided any appeal of Commerce's duty drawback or COS calculations.

[8] Commerce attempts to argue that its similar use of a COS adjustment was sustained in Uttam Galva III.  Remand Results at 37.  While that correctly summarizes the posture of the case, the court specifically detailed its concerns with the adjustment, stating that Commerce's COS adjustments "are suspect" and explaining that "Commerce's [COS] adjustments do not result from circumstances concerning the sale of merchandise."  Uttam Galva III, 416 F. Supp. 3d at 1407.  Ultimately, because plaintiffs' AD rates were calculated to be zero, plaintiffs did not further challenge Commerce's methodology and thus the methodology was sustained.  Id.

comported with the court's order because the court "did not remand this issue with specific instructions on how to address the duty drawback adjustment to the [normal value] side of the equation." Remand Results at 31. However, an altered methodology that negates the court's remand instruction does not comply with those instructions.

Thus, Commerce's new methodology is unlawful and did not comply with the court's remand instructions.

## CONCLUSION

The court concludes that Commerce's full duty drawback adjustment to export price in its Remand Results was in accordance with law and the court's remand instructions. This aspect of Commerce's remand is sustained. However, the court concludes that Commerce's COS adjustment to normal value was not in accordance with law or the court's remand instructions. The court thus remands the Remand Results to Commerce. On remand, Commerce shall, consistent with this opinion, recalculate normal value without making a circumstance of sale adjustment related to the duty drawback adjustment made to export price (or constructed export price). Commerce shall file with this court and provide to the parties its remand results within 90 days of this order; thereafter the parties shall have 30 days to submit briefs addressing the revised final determination with the court, and the parties shall have 30 days thereafter to file reply briefs with the court.

SO ORDERED.

                                                  /s/   Gary S. Katzmann
                                                Gary S. Katzmann, Judge

Dated: September 23, 2020
       New York, New York